■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ELLIOT HARMON, Appellant.— Judgment, Supreme Court, Bronx County, rendered June 14, 1972, convicting defendant, after a jury trial, of the crime of criminal possession of a dangerous drug in the fourth degree and sentencing him to State prison for an indeterminate term not to exceed four years, unanimously reversed, on the law and the facts, and vacated, and the order of said court,

dated March 22, 1972, denying a motion to suppress evidence, reversed, on the law and on the facts, and said motion granted, and the case remanded to the trial court for further proceedings not inconsistent herewith. Defendant aroused the suspicions of three police officers (who were seated in a nearby unmarked car on a robbery stakeout) when he: paced to and fro near a bus stop, but failed to enter any passing bus; was seen speaking to two males; and then observed sitting on a stoop for a while before engaging a third male in conversation. When defendant and his companion started to walk away from the officers, they decided to continue their surveillance, with one to follow on foot and the other two to drive to a point ahead of defendant in order to be in a position to "box" him in. Shortly thereafter, the officer on foot testified that he observed defendant drop "what appeared to me to be a quantity of a glassine envelope which he quickly retrieved and replaced in his right hand pocket." The officer admitted he could not observe the contents of the envelope; and defendant was permitted to proceed until stopped by the other two officers and then arrested by the officer who made the critical observation. Defendant was subsequently searched and found in his jacket pocket were 74 glassine envelopes containing a white powder which later analysis revealed was heroin. On essentially these facts, defendant's suppression motion was denied. We conclude that it should have been granted. We find nothing in defendant's behavior prior to the "drop" to have been particularly questionable or unusual; certainly not enough to constitute probable cause for an arrest. Nor do we believe the observed "drop" sufficient to raise the inference to anything beyond suspicion. If the "mere passing" of a glassine envelope has never been held to establish probable cause (*People* v. *Corrado*, 22 N Y 2d 308, 313), the dropping of it, alone, cannot justify the arrest. In short, even if we give full credit to the arresting officer's expertise in the area of narcotics detection, the observed acts were insufficient to establish probable cause for the arrest; and the search which followed was, therefore, illegal. (Cf. *People* v. *Brown*, 24 N Y 2d 421.) Since we have determined that the seized narcotics should have been suppressed, we find it unnecessary to reach the question discussed in the dissenting memorandum. Concur — Murphy, Lane and Capazzoli, JJ.; Nunez, J. P. and Kupferman, J., dissent in part and concur in the result in a memorandum by Kupferman, J., as follows: Kupferman, J. (dissenting in part and concurring in the result). In a four to three decision in *People* v. *Corrado* (22 N Y 2d 308) the dissent stated (p. 315) : " It is possible that appellants' acts would appear innocuous to a person untrained in the ways of the criminal. However, it was certainly reasonable for the arresting officers who were experienced in the pattern of criminal behavior which they were observing to deduce that a crime was being committed in their presence." The majority opinion by Keating, J. had the following (p. 313) : " This knowledge, it is claimed, justified the officer in drawing the inference that appellants probably had contraband in their possession. The argument is defective because the envelopes could have contained any number of non-contraband items. This is in sharp contrast to the translucent glassine envelope which has come to be accepted as the telltale sign of heroin. Still, even in the case of the glassine envelope it has never been held that the mere passing of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause." It is now some 5½ years later, and a continued familiarity with the scourge of heroin has given us experience which transcends the nicety of whether the glassine envelope does or does not have significance to a person trained in the

ways of a narcotic pusher. (Cf. chapter 603 of the Laws of 1973 "in relation to establishment of an emergency dangerous drug control program".) The situation here does not call for suppression. However, we conclude nonetheless that a new trial is warranted. The testimony shows that on the day of defendant's arrest the weather conditions were rainy and wet. Inasmuch as the officer testified that some of the glassine envelopes were allowed by the defendant to fall to the ground, the defense was entitled to show by expert testimony what the effect would be of water on a specimen glassine envelope on the questions of whether the envelopes contained heroin and whether there was actually a drop which invited observation.